302 So.2d 10 (1974)
STATE of Louisiana, Appellee,
v.
Hillary W. PIERRE, Appellant.
No. 54823.
Supreme Court of Louisiana.
October 11, 1974.
*11 Anthony R. Messina, Orleans Parish Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of the illegal possession of heroin and sentenced to serve three years at hard labor. Although four bills of exceptions were reserved during the trial, the defendant principally relies upon Bill No. 4 for reversal.
This bill arises under the following circumstances:
The defendant was arrested on September 27. The trial was held on November 17, some seven weeks later.
Officer Branham was qualified by the State as an expert in the field of illegal narcotics and narcotics control, including identifying marks on the skin arising from the use of them. After being so qualified, the officer testified about the "track marks" or scar tissue found on the arm of a heroin-user who injects the drug by needle over a long period of time.
The officer was then asked to examine the arm of the defendant. (The State properly retired the jury first, to permit the defense to make its objection outside of the jury's presence.) This was permitted over objection, as was the officer's testimony about the track marks.
The essential basis for the objection is the alleged lack of relevance of testimony of track marks at a trial seven weeks after the offense of possession was alleged to have occurred.
The objection is not frivolous. It presents a serious issue. Under the particular facts of this case, however, it was correctly overruled.
The defendant was found in possession of some paraphernalia commonly used by heroin-users. The only evidence of possession of heroin was found by chemical analysis of a very slight residue of a substance in a bottle cap. Since guilty knowledge is an essential element to prove illegal possession of heroin, State v. Smith, 257 La. 896, 244 So.2d 824 (1971), a serious issue was presented of whether the defendant knew the substance he possessed was heroin, as well as whether the defendant possessed for heroin-use the paraphernalia seized from him.
As the cited Smith case notes, track marks on a suspect at the time of his arrest tend to prove guilty knowledge (because of prior use) that the substance possessed by him is heroin. But, as the defendant contends, if track marks on the arm of a suspect are not tied down to the time of the illegal act, they are irrelevant and grossly prejudicial.
Here, however, the police officer specifically testified that the track mark was "inactive" scar tissue of a nature that must have existed prior to September 27, the date of the arrest. Under the Smith case and the prevalent jurisprudence relied upon by it, therefore, the track marks resulting from pre-arrest use of heroin was relevant as tending to prove guilty knowledge that the substance possessed at the time of arrest was heroin.
The probative value of the small and old track mark may not have been great, as could properly be brought to the attention of the trial jury. Nevertheless, we are not prepared to say that, in this instance, the evidence was improperly admitted; the jury could relevantly consider it, along with the possession of the paraphernalia, *12 as proving guilty knowledge of the illegal possession of heroin.
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
SANDERS, C. J., concurs in the decree.
BARHAM, J., dissents with written reasons.
BARHAM, Justice (dissenting).
Defendant reserved a bill of exceptions when the trial court allowed a State's expert witness to examine defendant's arms for needle "track marks" in the jury's presence and testify as to his conclusions based upon the examination. The thrust of defendant's objection is that the witness' testimony concerning track marks he observed at the time of the trial was irrelevant to the issues being tried.
The majority concedes that if the track marks about which the witness testified are not "tied down" to the time of the illegal act, testimony concerning these needle marks would be deemed irrelevant and grossly prejudicial. The majority determines, however, that "the police officer specifically testified that the track mark was `inactive' scar tissue of a nature that must have existed prior to September 27, the date of the arrest." The prosecutor propounded the following hypothetical question to the witness:
"* * * if you were to examine the arms of a narcotic user and in your opinion you would find trackmarks which you would classify as inactive, in your opinion, arrested and his arms examined and he had not used narcotics since Sept. 27 of 1971 would the track-marks be classified in your opinion as active or inactive."
The expert witness answered: "If I examined sometime after Sept. 27, 1971 and he had not used narcotics since that date, I would classify as inactive."
It is my respectful opinion that this testimony does not specifically establish that the track marks found on defendant's arms were "of a nature that must have existed prior to September 27" 1971. I believe, therefore, that the testimony was irrelevant and highly prejudicial. The question to which the witness responded was hypothetical and involved facts not proven to exist in defendant's case. There was no showing at trial that the defendant had not used narcotics since September 27, 1971, the day of his arrest. Moreover, the answer sought by the prosecution's question was simply whether track marks caused by injection of narcotics prior to September 27, 1971, would be classified as active or inactive. The expert witness testified that track marks on the arms of a person who had not used narcotics since September 27, 1971 would be classified by him as inactive. He testified earlier that defendant's track marks were inactive. However, there is no testimony that esablishes that defendant's track marks "must have existed prior to September 27."
Additionally, I am constrained to note my disapproval of the State's tactics in utilizing a substantial period of the time devoted to its case to display before the jury, a body bound to determine defendant's guilt or innocence of the crime of possession, irrelevant and inflammatory testimony and demonstrative evidence concerning the use of narcotics paraphernalia. Over the defendant's objection, the expert witness testified at some length concerning the method by which a narcotics user administers heroin to himself and gave a simulated demonstration of the use of narcotics paraphernalia and the injection of heroin to the jury. This graphic demonstration and painstaking explanation is irrelevant to the issue of the defendant's possession and only serves to inflame the jury against the defendant's narcotics use and apprise the jury of defendant's "bad character". In my opinion, a conviction obtained by these tactics is tainted and should not stand.
I respectfully dissent.